UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHRISTINA J. GREENFIELD,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF POST FALLS MUNICIPALITY, including employees and/or agents; MAYOR CLAYTON R. LARKIN, in his capacity; PRECEDING ADMINISTRATOR JIM HAMMOND, in his individual and official capacity; PRECEDING ADMINISTRATOR ERIC KECK, in his individual and official capacity; PROSECUTOR JOEL K. RYAN, in his individual and official capacity; PRECEDING CITY PLANNER COLLIN COLES, in his individual and official capacity; POST FALLS POLICE DEPARTMENT; CHIEF OF POLICE R. SCOT HAUG, in his individual and official capacity; DETECTIVE RODNEY L. GUNDERSON, in his individual and official capacity; DETECTIVE MARK GOODWIN, in his individual and official capacity; CAPTAIN GREG McLEAN, in his individual and official capacity; BERNARD (BARRY) WILLIAM McHUGH (KOOTENAI COUNTY PROSECUTOR) working for the City of Post Falls, in his individual and official capacity,<br><br>    Defendants. | Case No. 2:13-cv-00437-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Defendants filed a motion for judgment on the pleadings on January 21, 2014. In response, Plaintiff Christina Greenfield filed a motion to amend her complaint. Thereafter, Greenfield served discovery, and Defendants filed a motion to stay discovery because of the pending motions. The Court granted the motion to stay further discovery until it considered the pending dispositive motions. The motion for judgment on the pleadings and motion to amend are fully briefed, and ripe for the Court's consideration.

Having reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motions will be decided on the record before the Court. Dist. Idaho L. Rule 7.1(d).

## BACKGROUND

On October 4, 2013, Pro Se Plaintiff Christina Greenfield filed a complaint against the City of Post Falls, its mayor, and various administrators and employees (past and present), as well as members of the Post Falls Police Department, seeking damages for the Defendants' alleged failure to enforce its zoning laws to her detriment. The facts giving rise to Greenfield's complaint arise out of a zoning and boundary dispute, and a dispute about her neighbors' commercial activity operated out of their home.

The specific details of Greenfield's dispute with the City regarding her neighbors, the Wurmlingers,[1] are set forth in a thirty-four page complaint. (Dkt. 1.)[2] Defendants filed their answer on October 24, 2013, (Dkt. 23), denying the claims. The events giving rise to the complaint begin with Greenfield's purchase of her home in May of 2005, which was when she first became aware that her neighbors owning the adjacent property allegedly were operating an illegal bed and breakfast out of their home. Greenfield asserts that the operation of a bed and breakfast is prohibited under Post Falls City Ordinance 18.20.030. Greenfield notified the City on May 23, 2005, of the alleged illegal activities of her neighbors. Greenfield claims the City took no action.

The other dispute with the Wurmlingers involves an arborvitae hedge consisting of twenty-four arborvitae shrubs planted by the Wurmlingers on or near the property line separating Greenfield's property from the Wurmlinger property. Greenfield alleges the hedge constitutes a fence, that it exceeded the height limit set forth in the City Fence Ordinance, and that it obstructed Greenfield's view. Greenfield first notified the City on April 12, 2006, and demanded enforcement of the fence ordinance by the City. In

---

[1] In addition to this lawsuit, Greenfield sued the Wurmlingers in the District Court of the First Judicial District of the State of Idaho, in and for the County of Kootenai, Case No. CV 2010-8209. Erbland Aff. ¶1, Ex. 1, (Dkt. 30-1.) Greenfield asserted claims against the Wurmlingers for nuisance and negligent infliction of emotional distress, as well as equitable claims praying for injunctive relief and abatement relief with regard to the bed and breakfast business operated by the Wurmlingers out of their home. *Id.* The Wurmlingers filed an answer and counterclaim, asserting their own claims for negligent infliction of emotional distress, trespass, and timber trespass for the cutting of their hedge. Erbland Aff. ¶3, Ex. 2, (Dkt. 30-1.)

After a jury trial in which the jury returned a verdict in favor of the Wurmlingers, Erbland Aff. ¶5, Ex. 3, Special Verdict Form (Dkt. 30-1), judgment was entered against Greenfield on January 7, 2013. Erbland Aff. ¶5, Ex. 4, (Dkt. 30-1.)

[2] Greenfield filed an amended complaint on January 7, 2014, (Dkt. 34), but did not seek leave of the Court to do so under Fed. R. Civ. P. 15. Therefore, the Court does not consider it to be the operative complaint for purposes of Defendants' motion.

**MEMORANDUM DECISION AND ORDER - 3**

response to the City's enforcement letters, Wurmlinger trimmed "some" of the hedges, but not all.

The hedge dispute burgeoned in May of 2006, when Greenfield hired an attorney whom she directed to send a demand letter ordering the Wurmlingers to trim their hedge to the allowable "CC&R height requirement of five feet," and to correct other violations noted on the property. The Wurmlingers and Greenfield entered an agreement regarding those issues, including a requirement that the hedge be maintained at a height of six feet. Compl. ¶ 30. In June and July of 2006, the City changed its fence ordinance to exclude "landscaping and hedges" from the ordinance language prescribing the maximum height of fences.

In November of 2008, the City issued a warning letter to the Wurmlingers regarding the expansion of their business activities subject to their special use permit, but Greenfield alleges the Wurmlingers ignored the City's demand to scale back their bed and breakfast business. Greenfield alleges that, but for one letter, the City did nothing further to enforce its zoning ordinances to halt the neighbors' activities. Greenfield persisted in attempting to have the City enforce its zoning regulations by writing several letters in 2009, which she alleges fell on deaf ears.

On April 1, 2010, Greenfield decided to take matters into her own hands. She trimmed ten of the arborvitae shrubs to the prescribed height of six feet. Mr. Wurmlinger called the police, who began an investigation. The police submitted a criminal complaint against Greenfield as a result, charging her with Felony Malicious Injury to Property. On June 14, 2010, Greenfield was served a summons to appear in district court, wherein she

was formally charged. Greenfield alleges she was arrested, hand cuffed, searched, and forced to sit in a chair for several hours while being processed for the crime. Greenfield was arraigned on the charges on June 23, 2010, and she appeared before Judge Friedlander, the City Attorney's wife. Because the judge did not recuse herself given the history between Greenfield and the City Attorney's office, Greenfield alleges a miscarriage of justice.

After her arrest and arraignment, Greenfield alleges that Defendant McLean was interviewed by the local paper and described Greenfield as a "criminal Hedge Hacker," among other remarks. Greenfield alleges that her reputation was tarnished by the "slanderous remarks."

Greenfield had several court appearances, which she alleges caused absences from her work. She asserts that the absences, together with negative publicity on local news sources, resulted in the termination of her employment on September 2, 2010, from her job at a local bank.

As part of the criminal investigation, Wurmlinger hired a crew to perform a survey of the arborvitae hedge on December 16, 2010. The survey was allegedly provided to the City and the Kootenai County Prosecutor, Defendant Barry McHugh. Greenfield asserts she requested the results of the survey, but that Defendant Gunderson and Defendant McHugh denied the existence of the survey and refused to give Greenfield the findings from the survey during the course of discovery in the criminal case.

On October 4, 2011, after "a grueling nineteen months post her arrest," Greenfield was acquitted and found not guilty of the criminal charges. Greenfield alleges that, after

the termination from her employment with the bank, she was unable to secure employment during the "post-arrest timeframe, pending criminal proceedings while awaiting trial," and that she has not been employed for thirty-six months after her initial arrest. Greenfield asserts that her arrest and prosecution caused her financial ruin, resulting in filing for bankruptcy.

The hedge dispute has continued. Greenfield contends that Mr. Wurmlinger has trespassed upon her property ten times to trim the arborvitae shrubs, and each time, Greenfield complained to the police department, but the City has refused to prosecute Mr. Wurmlinger. Apparently, Mr. Wurmlinger also has filed numerous malicious injury to property reports accusing Greenfield of trespass on his property from April 2007 to the present. Defendant Gunderson was assigned to investigate the matters, but Greenfield alleges instead that Defendant Gunderson and other members of the police force have "conspired to harass Greenfield by confiscating her garbage and inspecting said contents, installing surveillance cameras … on the Wurmlinger property … and organizing several overnight surveillance watches .…" Neither Greenfield nor Wurmlinger have been charged with any crimes.

Greenfield alleges that on August 17, 2011, Defendant Gunderson and Defendant Goodwin retrieved a garbage bag from her residence and "released unrelated personal and confidential information in his [Gunderson's] report pertaining to highly sensitive data that Greenfield had submitted to the Idaho American Civil Liberties Union 'Legal Department,' as well as receipts … and personal information about Greenfield's financial situation." Greenfield alleges that such acts have caused "extreme emotional distress."

Greenfield alleges that her reputation has been tarnished by the continuing acts of Defendants stemming from the "false Felony charge" and other charges brought against her. Greenfield contends that the City and the named Defendants have refused to enforce city ordinances to her detriment as a property owner, and have "retaliated against her with malicious prosecution, harassment, abuse of power, and police misconduct," causing her lost "economic opportunity, deprivation of civil rights, violation of Constitutional rights, defamation of character, failure to keep from harm, invasion of privacy, intentional and negligent infliction of emotional distress, and false arrest."

Greenfield alleges she filed a notice of tort claim on April 2, 2012, pursuant to Idaho Code § 50-219, with the City of Post Falls and Kootenai County. However, according to the affidavits Defendant submitted, the City and the County received the notices by certified mail on April 3, 2012. Aff. of Hayes (Dkt. 35-2); Aff. of Howard (Dkt. 35-3.) The notice of tort claim specifies that her claim arose out of her June 14, 2010 arrest and acquittal of those charges on October 4, 2011.

Greenfield's Complaint contains several claims for relief. Claim number one alleges violation of her right to equal protection under the Fourteenth Amendment, on the grounds that the City and the named Defendants subjected her to unequal treatment by refusing to enforce city ordinances. She claims her property rights have been damaged as a result. Greenfield's second claim alleges violation of the "right of equal protection of law under Article I, Sections 1, 8, 13, 17, and 22" of the Idaho Constitution. In this claim, Greenfield alleges that Defendants "did not protect Greenfield from harm by falsely accusing her of a crime and maliciously prosecuting her for said crime," when she had a

legal right to maintain her hedge. As part of the criminal prosecution, Greenfield alleges a conspiracy to conceal evidence, namely the survey that was conducted to determine the true property line and location of the hedge. Greenfield's third claim alleges another violation of her right to equal protection under "Article I, Section 14141." In this claim, Greenfield alleges that her right to privacy was violated because of the "unwarranted surveillance abuse" and retrieval of "highly sensitive, personal information" from her property.

Greenfield's fourth claim alleges "deprivation of rights under color of law" and cites Title 18, U.S.C. § 242. The constitutional violation alleged is the violation of her "human rights" including the right that her integrity and safety will be protected, the right to a fair trial, due process, and the right to participate in a civil society.

Greenfield's fifth claim for relief alleges abuse of process during the criminal proceedings against her that culminated in the acquittal on October 4, 2011. She alleges she was unjustly accused of a crime, and that the police engaged in misconduct during the investigation. Continuing in that vein, Greenfield's sixth claim alleges malicious prosecution, again referring to the prosecution for malicious injury to property. Greenfield's seventh claim alleges "tortious interference for damages lost for past and future earnings," claiming that as a result of Defendants' conduct, Greenfield lost "past and future earnings along with prospective future employment opportunities." Greenfield's eighth and ninth claims for relief allege intentional and negligent infliction of emotional distress, respectively. Greenfield again refers to Defendants' lack of

enforcement of the city ordinances with respect to the Wurmlingers' conduct, and the criminal prosecution of her for trimming the hedge.

Defendants' motion for judgment on the pleadings asserts Defendants are entitled to judgment because Greenfield's claims are legally insufficient; barred by the two-year statute of limitations; or barred for failure to timely file a notice of tort claim.

In response to Defendants' motion, Greenfield filed a motion to amend her complaint under Fed. R. Civ. P. 15(a)(1)(B). The motion attached a proposed Amended Complaint consisting of a hefty eighty pages instead of a mere thirty four pages constituting the original complaint. Claims one through nine are the same as in the original complaint. The proposed amended complaint generally describes the same facts as the Complaint, albeit in more detail. Greenfield adds claims for libel and defamation; intentional breach and tortious interference of contractual agreement; civil conspiracy; violation of her Fifth Amendment right of procedural due process; and spoliation of evidence. Defendants argue that Greenfield's motion is improper and should be denied because she does not have the right to amend her pleading "as a matter of course" under Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure. Defendants further contend that amendment would be futile.

## DISPOSITION

### 1.      Standard of Review

According to Federal Rule of Civil Procedure 12(c), a judgment on the pleadings is properly granted when, "taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *McGann v. Ernst & Young*, 102 F.3d 390, 392

(9th Cir. 1996). In determining whether a complaint states a cognizable claim under Rule 12(c), courts apply the same legal standards applicable to motions brought under Rule 12(b)(6). *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054, n. 4 (9th Cir. 2011) ("we have said that Rule 12(c) is functionally identical to Rule 12(b)(6) and that the same standard of review applies to motions brought under either rule.").

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a plaintiff's claim for relief. The relevant inquiry is whether the plaintiff's allegations are sufficient under Federal Rule of Civil Procedure 8(a), which sets forth the minimum pleading requirement, *i.e.*, that the plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When reviewing a motion to dismiss, the court must accept as true all nonconclusory, factual (not legal) allegations made in the complaint, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Erickson v. Pardus*, 551 U.S. 89 (2007), and draw all reasonable inferences in favor of the plaintiff, *Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In addition, "[f]actual allegations must be enough to raise a right to relief above

the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* Dismissal may therefore be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

Further, the Court may not consider any evidence contained outside the pleadings without converting the motion to one for summary judgment. *See* Fed. R. Civ. P. 12(b); *United States v. Ritchie*, 342 F.3d 903, 907–908 (9th Cir. 2003). "A court may, however, consider certain materials–documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice–without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908 (citing *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994); 2 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 12.34[2] (3d ed. 1999)). And, the Court may consider evidence upon which the complaint "necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document. *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994). The court may treat such documents as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Defendants have attached to their motion the Affidavit of Kootenai County clerk Clifford Hayes and the Affidavit of Post Falls City clerk Shannon Howard, which affidavits authenticate the notice of tort claims received by the respective offices.

Greenfield references the notice of tort claim she filed in paragraph 53 of her Complaint, and does not question the authenticity of the documents Defendants submitted. The Court therefore considers them as part of the Complaint and for purposes of ruling upon Defendants' motion.

**2.      Constitutional Claims Brought Under 42 U.S.C. § 1983 (Claims One, Two, Three, and Four)**

Greenfield asserts her constitutional claims under 42 U.S.C. § 1983, the civil rights statute. *See* Pl.'s Mem. at 5-6, (Dkt. 37-1.) To assert a claim under Section 1983, a plaintiff must show the existence of four elements: "(1) a violation of rights protected by the Constitution or created by federal statute (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Section 1983 is "'not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

**A.      *Statute of Limitations***

The statute of limitations period for filing a civil rights lawsuit under 42 U.S.C. § 1983 is determined by the statute of limitations period for personal injuries in the state where the claim arose. *Wilson v. Garcia*, 471 U.S. 261 (1985) (later overruled only as to claims brought under the Securities Exchange Act of 1934, not applicable here). Idaho Code § 5-219 provides for a two-year statute of limitations for professional malpractice, personal injury, and wrongful death actions. Federal civil rights actions arising in Idaho

are governed by this two-year statute of limitations. *Samuel v. Michaud*, 980 F.Supp. 1381, 1410 (D. Idaho 1996), *aff'd* 129 F.3d 127 (9th Cir. 1997).

Although the Court relies upon the state statute of limitations to determine the time for filing a claim, the Court uses federal law to determine when a claim accrues. *Elliott v. City of Union City*, 25 F.3d 800, 801-02 (9th Cir. 1994). The United States Court of Appeals for the Ninth Circuit has determined that a claim accrues when the plaintiff knows, or should know, of the injury that is the basis of the cause of action. *See Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996). Under this "discovery rule," the statute begins to run once a plaintiff knows of her injury and its cause. *Gibson v. United States*, 781 F.2d 1334, 1344 (9th Cir. 1986).

Greenfield filed her Complaint in this case on October 4, 2013. Therefore, to proceed, her claims must have accrued <u>on or</u> <u>after</u> October 4, 2011. Greenfield's federal claims are time-barred to the extent they are based upon facts alleged prior to October 4, 2011. Greenfield must have known about her injuries at the time they were sustained, as she was an active participant in making complaints to the City about the alleged zoning violations. The law is clear that a claim accrues upon awareness of an actual injury, "and not when the plaintiff suspects a legal wrong." *Lukovsky v. City and County of San Francisco*, 535 F.3d 1044, 1049 (9th Cir. 2008).

The Court will proceed to discuss Greenfield's allegations in each of her claims for relief in further detail.

**B.**     *Fourteenth Amendment Equal Protection Claim (Count One)*

In her first claim, Greenfield alleges violation of the Equal Protection Clause in the Fourteenth Amendment. This claim is based upon the City's acts in failing to enforce the fence height requirement applicable, at the time, to hedges. These events occurred, as described in the Complaint, between 2005 and 2006. Compl. ¶¶ 28, 29, 30, 31, 32. Additional allegations comprising this claim appear to be based upon the Wurmlingers' commercial activities, and the City's failure to enforce its zoning ordinances to Greenfield's detriment. These events occurred, as described in the Complaint, between 2005 and 2009. Compl. ¶¶ 33-38. Claims based upon these events are therefore time barred.

To the extent Greenfield's claim for violation of her right to equal protection is not time barred, her claim does not survive on its merits. Under the Equal Protection Clause, "all persons similarly circumstanced shall be treated alike" by governmental entities. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920). However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 (1940). The Ninth Circuit has held that § 1983 claims based on Equal Protection violations "must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." *Monteiro v. Tempe Union High School Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998).

Greenfield has not alleged that she is a member of a protected class. Although she is not a member of a protected class, Greenfield's equal protection claims are cognizable

under the theory that she is a "class of one," because she has asserted that she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Id*. at 564 (internal citation omitted). The relevant inquiry is whether Defendants' actions are "patently arbitrary and bear[] no rational relationship to a legitimate governmental interest." *Vermouth v. Corrothers*, 827, F.2d 599, 602 (9th Cir. 1987).

Under this rational basis test, Greenfield would prevail only if she is similarly situated with persons who are treated differently by Defendants, and if Defendants have no rational basis for the dissimilar treatment. In other words, Greenfield must show that Defendants intentionally, and without rational basis, treated Greenfield differently from other similarly situated property owners and that the discriminatory treatment was "intentionally directed just at [her], as opposed … to being an accident or a random act." *Yocum v. Kootenai County*, 2011 WL 2650217 *3 (D. Idaho July 6, 2011).

Here, Greenfield has not alleged that other property owners similarly situated to her were treated differently. She contends the City deprived her of her due process rights when the Defendants conspired to remove the words "landscaping" and "hedges" from the fence ordinance. She contends that the City's change to the fence ordinance "protects one individual over the rights of another" in violation of the Fourteenth Amendment. But

she has not alleged that the City failed to follow its own legislative process, or that the amendment applied only to her property. In other words, she has not alleged that she was treated differently from other property owners seeking to enforce the fence height requirement.

Similarly, Greenfield alleges that the City has allowed the Wurmlingers to continue to operate their bed and breakfast business in violation of City ordinances, thereby depriving Greenfield of her property rights. Again, she has not alleged that the City intentionally treated Greenfield differently than other neighbors with similar zoning disputes against adjacent property owners. Greenfield has not applied for a conditional use permit to operate a home business and been denied. Nor has Greenfield alleged that other property owners are successful in having the City enforce its zoning regulations. Further, the Court is reluctant to become the arbiter of the City's land use policy, and its decision to enforce (or not enforce) its zoning ordinances. *Burch v. Smathers*, 2014 WL 29261 *10 (D. Idaho Jan. 3, 2014) ("land-use planning questions touch a sensitive area of social policy into which the federal courts should not lightly intrude.").

Greenfield proposes to amend her complaint with additional facts and events comprising her equal protection claim. Am. Compl. ¶¶ 23-83. However, most of those events occurred prior to October 4, 2011. *Id.* Further, the equal protection claim based upon the fence ordinance and the zoning ordinance is subject to the same substantive analysis above.

Greenfield asserts new allegations about several vandalism complaints lodged by the Wurmlingers against Greenfield, and by Greenfield against the Wurmlingers,

occurring after October 4, 2011, for trimming the arborvitae hedge. Am. Compl. ¶¶ 87-98. Greenfield contends the police, prosecutor, and the City have never brought criminal charges against the Wurmlingers for cutting the hedge, even though she was arrested, charged, and prosecuted for similar activity. The facts as alleged raise a selective prosecution claim in Claim number one, as amended. Am. Compl. ¶ 101, p. 54. Greenfield alleges she was prosecuted while the Wurmlingers were not for the same or similar offense, in violation of her equal protection rights. *See Maxfield v. Thomas*, 557 F.Supp. 1123, 1128 (D. Idaho 1983) (naturopath alleges Fourteenth Amendment violation for selective prosecution for involuntary manslaughter while medical doctors were not prosecuted for similar offences).

To prevail upon an equal protection claim for selective enforcement or selective prosecution under the Fourteenth Amendment, a plaintiff must demonstrate that "enforcement had a discriminatory effect and the police were motivated by a discriminatory purpose." *Lacey v. Maricopa County*, 593 F.3d 896, 920 (9th Cir. 2012). Enforcement may be shown through a variety of actual or threatened arrests, searches and temporary seizures, citations, and other coercive conduct by the police. *Id.* To prove a discriminatory effect, "the claimant must show that similarly situated individuals ... were not prosecuted." *Id.* The standard for proving discriminatory effect "is a demanding one." *Id*. To state a claim, Greenfield must allege facts, either anecdotal or statistical, demonstrating "that similarly situated defendants ... could have been prosecuted, but were not." *Id.*

To establish that the police were motivated by an improper purpose, Greenfield must show that the named Defendants decided to enforce the law against her "on the basis of an impermissible ground such as race, religion or exercise of ... constitutional rights." *Id.* at 922; *Maxfield*, 557 F.Supp. at 1134 (granting summary judgment to the defendant because there were no facts supporting the plaintiff's assertion he was prosecuted upon impermissible grounds, such as for the exercise of a constitutional right).

Greenfield has a dispute with her neighbor. Other than her neighbor not being criminally charged and prosecuted for chopping the hedge, Greenfield has not (and likely cannot) alleged facts demonstrating that <u>other</u> similarly situated individuals, <u>like her</u>, were not prosecuted for trespass or malicious injury to property. Even if she could establish such facts, she has not demonstrated, nor can she, that the law was enforced against Greenfield on an impermissible ground. Greenfield has not alleged that she suffered criminal prosecution because of race, religion, or the exercise of her constitutional rights, such as free speech.

Greenfield has not pled that she was treated any differently than the Wurmlingers for the tit-for-tat hedge trimming events occurring after October 4, 2011. Neither Greenfield nor her neighbor have been criminally charged. Greenfield cannot, therefore, establish disparate treatment based upon selective enforcement of the law for the hedge trimming episodes occurring after October 4, 2011. She has been treated exactly the same as her neighbor, and no criminal charges have been pursued against her or her neighbor.

Furthermore, the prosecutors (Defendant Joel Ryan and Barry McHugh) would be entitled to prosecutorial immunity from the claims for relief alleged by Greenfield arising

out of her arrest in 2010 and prosecution that ended in October 2011. *Maxfield*, 557 F.Supp. at 1128-31 (dismissing the plaintiff's case for selective prosecution because the plaintiff's complaint fell within the decision to prosecute, initiate, and present the state's case against the plaintiff). The City and its agents would not be liable for selective prosecution unless Greenfield could show that the decision to prosecute her was a manifestation of an unconstitutional policy or custom of Defendant City of Post Falls. *Maxfield*, 557 F.Supp. at 1133. Greenfield has not alleged the existence of an unconstitutional policy or custom—only that there was an allegedly concerted effort to bring charges against her (and only her).

Greenfield's claims under the Fourteenth Amendment are time barred. To the extent they are not, they are subject to dismissal for failure to state a claim. Amendment as proposed would be futile, because Greenfield cannot establish the elements of selective prosecution, or a violation of her right to equal protection based upon the boundary dispute with her neighbor.

### C. *Idaho Constitutional Claims (Claims Two and Three)*

Greenfield seeks money damages for alleged violations of the Idaho Constitution. Specifically, she alleges that she was falsely accused of a crime and maliciously prosecuted for the crime, which conduct constituted a violation of her equal protection rights under the Idaho Constitution. She further alleges a "miscarriage of justice," because Defendant Gunderson allegedly concealed evidence by preventing the survey of the property boundary from being used in the felony case. And finally, she alleges her equal protection rights were violated because her "right to privacy" was violated by

"surveillance abuse" and by taking her garbage. Greenfield claims that Defendants'

course of conduct led to false arrest and malicious prosecution.

This Court has previously held that no direct cause of action exists for violations

of the Idaho Constitution. This Court has previously reviewed some of those decisions

and held that "no Idaho statute serves a function analogous to that of 42 U.S.C. § 1983 by

creating a cause of action for violations of Idaho's Constitution." *Campbell v. City of

Boise City*, 2008 WL 2745121 *1 (D. Idaho July 11, 2008) (quoting *Hancock v. Idaho

Falls School Dist. No. 91*, 2006 WL 1207629 (D. Idaho May 2, 2006). In *Campbell*, the

Court dismissed the plaintiff's claim for false arrest in violation of sections of the Idaho

Constitution equivalent to the Fourth Amendment. *Id. See also Sommer v. Elmore

County*, 903 F.Supp.2d 1167, 1074 (D. Idaho Sept. 30, 2012) (refusing to recognize a

private right of action for monetary damages for violation of due process under Section I

of the Idaho Constitution); *Mott v. City of McCall, Idaho*, 2007 WL 1430764 *6 (D.

Idaho May 14, 2007) (finding no private cause of action for an Idaho Constitutional law

violation alleged to have occurred as a result of a traffic stop); *Boren v. City of Nampa*,

2006 WL 2413840 *10 (D. Idaho Aug. 18, 2006) (dismissing plaintiff's claims against

the City of Nampa under the Idaho Constitution because it does not provide for a private

cause of action for monetary damages based on an alleged violation of a person's civil

liberties).

Greenfield's second and third claims as set forth in her Complaint are properly

dismissed with prejudice and any amendment as set forth in her proposed Amended

Complaint would be futile.

**D.** *Deprivation of Rights Claim (Claim Four)*

Greenfield's fourth claim alleges deprivation of her rights under 18 U.S.C. § 242, a federal criminal statute providing criminal penalties for deprivation of constitutional rights committed by state or federal agents. *See Screws v. U.S.*, 325 U.S. 91 (1945) (discussing constitutionality of prior version codified at 18 U.S.C. § 52). The statute provides no basis for civil liability. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Agnew v. City of Compton*, 239 F.2d 226, 230 (9th Cir. 1956), *cert. denied* 353 U.S. 959, (1957), *overruled on other grounds, Cohen v. Norris*, 300 F.2d 24, 29-30 (9th Cir. 1962).

In her proposed amended complaint, Greenfield adds additional factual assertions, but continues to assert deprivation of her rights under 18 U.S.C. § 242. She adds a claim under 18 U.S.C. § 241. *Aldabe* precludes civil claims brought pursuant to 18 U.S.C. § 241 as well. Greenfield's proposed amendment to this claim would therefore be futile.

Greenfield may not maintain a claim for civil liability under 18 U.S.C. § 242 or 18 U.S.C. § 241, and her fourth claim for relief is appropriately dismissed with prejudice and her motion to amend denied because of futility.

**3.    State Law Claims (Five, Six, Seven, Eight, and Nine)**

The Court has discretion whether to exercise supplemental jurisdiction over the remaining state law claims contained within counts five through nine of the Complaint. 28 U.S.C. § 1367. Given the reasons for finding Defendants entitled to judgment, and in an effort to prevent further litigation, the Court will exercise jurisdiction over the remaining state law claims.

Defendants argue that Greenfield's state law claims for abuse of process, malicious prosecution, tortious interference for damages lost for past and future earnings, intentional infliction of emotional distress, and negligent infliction of emotional distress (counts five through nine of the Complaint) are precluded due to Greenfield's failure to file a timely notice of claim as required by the Idaho Tort Claims Act ("ITCA"). *See* Idaho Code § 6-906. Idaho Code § 6-908 provides, "No claim or action shall be allowed against a governmental entity or its employee unless the claim has been presented and filed within the time limits prescribed by this act." The Tort Claims Act requires the notice of claim to be <u>presented and filed</u> within 180 days from the date the claim arose. Idaho Code § 6-906.

The Idaho Supreme Court has held that the filing of a notice of claim as required by the Tort Claims Act is "a mandatory condition precedent to bringing suit, the failure of which is fatal to a claim, no matter how legitimate." *Banks v. Univ. of Idaho*, 798 P.2d 452, 453 (Idaho 1990) (quoting *McQuillen v. City of Ammon*, 747 P.2d 741, 744 (Idaho 1987)).Claims subject to the ITCA include "any written demand to recover money damages from a governmental entity or its employee which any person is legally entitled to recover under this act as compensation for the negligent or otherwise wrongful act or omission of a governmental entity or its employee when acting within the course or scope of his employment." Idaho Code § 6-902(7). In addition, "a governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which arises out of any act or omission of an employee of the governmental entity exercising ordinary care." Idaho

Code § 6-904(1). A person bringing such a claim against a political subdivision of the state or against any employee thereof is required to file a notice of claim with the clerk or secretary of the political subdivision within one hundred eighty (180) days from the date the claim arose or reasonably should have been discovered. Idaho Code § 6-906.

The Affidavits of Post Falls City clerk, Shannon Howard, and Kootenai County clerk, Clifford Hayes, contain public records establishing Greenfield filed her notice of tort claims with both entities on April 3, 2012. In her notice of tort claim, Greenfield alleges she was falsely accused and charged with felony malicious injury to property on June 14, 2010, and acquitted of the charge on October 4, 2011. According to her Complaint, Greenfield's damages are premised upon the initial criminal prosecution and acquittal. All of her state law claims arise out of conduct allegedly ending upon her acquittal on October 4, 2011.

Greenfield admits in her memorandum that October 4, 2011, began the 180 day countdown for filing her notice of tort claim. Pl.'s Obj., at 4 (Dkt. 41.) Greenfield correctly notes that, when calculating the 180 day filing period, the day of the event triggering the period (October 4, 2011) is excluded. October 5, 2011, is included as day number one. One hundred eighty days from October 4, 2011, ends upon Sunday, April 1, 2012. Therefore, the 180 day period ended on Monday, April 2, 2012. Greenfield admits

that the 180 day deadline to file the notice of tort claim fell on "Tuesday [sic] April 2, 2012.' Pl.'s Obj., at 4 (Dkt. 41.)[3]

Greenfield contends, however, that her Notice of Tort Claim, received by mail on April 3, 2012, was timely. She alleges she mailed the notice of tort claim on April 2, 2012, and therefore the three day mailing rule in Fed. R. Civ. P. 6(d) applies to give her an additional three day grace period. Greenfield is correct that, under Fed. R. Civ. P. 6(d), three days are added after the period would otherwise expire under Rule 6(a) if service is made by mail. However, Fed. R. Civ. P. 6 applies only when computing any time period "specified in these rules," and therefore do not apply to the <u>filing</u> deadline specified in Idaho Code § 6-906.

Idaho R. Civ. P. 6(e)(1), like the Federal Rules of Civil Procedure, contains a three day grace period applicable after service by mail. The Rule states: "Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper is served upon the party by mail, three (3) days shall be added to the prescribed period." This rule applies only if an opposing party receives service of papers by mail, and is required to act after receipt of service within a prescribed period of time. For example, if a plaintiff serves requests for admission by mail, the opposing party has thirty days plus three within which to respond. However, the Rule does not apply to the filing deadline in

---

[3] Idaho R. Civ. P. 6(a) applies to the computation of time prescribed by "any applicable statute." Rule 6(a) indicates that the day of the act is not included in the time period, but the last day is included unless it is a Saturday, Sunday, or holiday. Thus, if the last day falls on a weekend or holiday, the next day which is neither a weekend nor a holiday constitutes the end of the period. Rule 6(a) comports with the computation above, meaning the end of the 180 filing period was Monday, April 2, 2012.

Idaho Code § 6-906. *See also* Idaho R. Civ. P. 1(a) (indicating the scope of the rules is limited to the procedure applicable in the district courts and magistrate's divisions of the district courts in the state of Idaho).

The effect of a claimant's failure to comply with the notice requirement contained in § 6–906 is straight forward; it is an absolute bar to an action sounding in tort against a governmental entity for violation of Idaho state law. *See Mallory v. City of Montpelier*, 885 P.2d 1162 (Idaho Ct. App. 1994) (affirming trial court's dismissal of state law claims when plaintiff filed notice of claim <u>182</u> days after the incident occurred). The failure to comply with the notice requirement is fatal to one's claim, no matter how legitimate. *McQuillen v. City of Ammon*, 113 Idaho 741, 744 (1987). There is no exception in the Tort Claims Act providing an extension, by mail or otherwise, to the time in which notice of the claim must be filed. *Petty v. Bonner County*, 2011 WL 1484120 *3 (D. Idaho Mar. 30, 2011).

Further, Greenfield has not presented any authority indicating that Idaho courts would apply the mailing rule applicable to service contained in Idaho R. Civ. P. 6(e)(1) to extend the 180 day filing deadline. If Greenfield's proposition were accepted, litigants on the one hundred and eightieth day could simply drop their notice of tort claim in the mail, and claim entitlement to the extra three days afforded by mailing. Such is not the rule under *Mallory*, which barred a claim filed two days late. *Mallory*, 885 P.2d at 1164-65; *see also Lewis v. City of Nampa,*, 2006 WL 318812 (D. Idaho Feb. 8, 2006) ("Notice of the tort claim needed to be <u>received</u> by the municipalities within 180 days from the date the claim arose…") (emphasis added).

The 180 day filing deadline is absolute. Greenfield's notice of tort claim encompassing Counts five, six, seven, eight and nine in her Complaint are time barred because the notice of tort claim was not "presented to and <u>filed</u> with the clerk" within the prescribed time period. It was received, and therefore filed, one day late.

Further, all of Greenfield's claims arise out of her alleged false arrest and prosecution for malicious injury to property. Defendants are immune from allegations of false arrest and malicious prosecution. Idaho Code § 6–904(3) provides: "A government entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which ... (3) Arises out .... false arrest, malicious prosecution...."

Idaho Code § 6–904(3) precludes government liability on claims arising out of false arrest, malicious prosecution, or both. Greenfield asserts claims of malicious prosecution, harassment, and abuse of process, as well as negligence. The crux of these claims is Greenfield's theory that Defendants did not have an adequate basis for pursuing prosecution for violations of City codes. Greenfield's asserted claims of negligence, harassment, tortious interference for damages lost for past and future earnings, intentional infliction of emotional distress, and negligent infliction of emotional distress each arise out of the general claim of malicious prosecution. Immunity granted under I.C. § 6–904(3) is not annulled because Greenfield changed the wording for her theories upon which her claims are based. *Boren v. City of Nampa*, 2006 WL 2413840 *10 (D. Idaho

Aug. 18, 2006) (citing *Intermountain Construction v. City of Ammon*, 122 Idaho 931, 841 P.2d 1082 (1992)).[4]

Greenfield's state law claims are subject to dismissal.

**4.     Plaintiff's Proposed Amended Complaint**

Fed. R. Civ. P. 15 permits amendment of the pleadings before trial, during trial, and after trial. Greenfield contends she may amend her complaint as a matter of right. Rule 15(a)(1)(B) allows amendments as a matter of course within 21 days after service of a motion under Rule 12(b), (e), or (f). Defendants filed their motion under Rule 12(c).

Alternatively, Rule 15(a)(2) permits a party to amend its pleadings prior to trial with leave of the court, and the court "should freely give leave when justice so requires." *See Bonin v. Calderon*, 59 F.3d 815 (9th Cir. 1995). The Ninth Circuit has stated that in assessing the propriety of a motion to amend, the Court should consider five factors: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the [party] has previously amended his [pleadings]." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004).

Futility alone can be enough to deny a motion for leave to amend. *Id*. In *Bonin v. Calderon*, the Ninth Circuit found the "proffered amendments would be nothing more than an exercise in futility." 59 F.3d 815, 845 (9th Cir. 1995). That court also noted that the district court did not abuse its discretion in denying the motion to amend, because the

---

[4] In *Boren*, the Court considered a complaint similar to the one Greenfield brings here. The complaint in *Boren* arose out of a zoning dispute. The plaintiff wanted the City of Nampa to approve her business of selling renovated cars from her property zoned for residential use. The City of Nampa filed a criminal charge against the plaintiff alleging she was operating an illegal salvage operation in violation of the City's zoning laws. The plaintiff's claims against the City and law enforcement personnel for malicious prosecution and false arrest were dismissed pursuant to Idaho Code § 6-904(3), as well as for failure to file a notice of tort claim. 2006 WL 2413840 at *10.

moving party presented "no new facts but only new theories and provide[d] no satisfactory explanation for his failure to fully develop his contentions originally." *Id.*

### A.  *State Law Claims*

Greenfield proposes again to bring claims for abuse of process, malicious prosecution, tortious interference for damages lost for past and future earnings, intentional infliction of emotional distress, and negligent infliction of emotional distress (counts five through nine of the proposed Amended Complaint). But, these are the same claims that arose out of the allegations in the original complaint, and which Greenfield admitted arose out of her arrest and prosecution for malicious injury to property. The claims under state law arose, at the latest, on October 4, 2011. No matter how the claims are restated or further embellished with facts, the state law claims are barred by operation of Idaho Code § 6-906 because the notice of tort claim encompassing these claims was untimely filed one day late. An amendment to the complaint would therefore be futile.

Greenfield purports to add more claims under state law. She alleges libel and defamation; intentional breach and tortious interference of contractual agreement; civil conspiracy; and spoliation of evidence (claims ten, eleven, twelve, and fourteen). With the exception of "defamation," none of these causes of action are mentioned in the Notice of Tort claim. Even if they were, they are, again, time barred.

The libel and defamation claim is described in paragraph 62 of the proposed amended complaint. Greenfield refers to several allegedly libelous or slanderous remarks made about her by Defendant McLean to the news media. According to the facts alleged in the Complaint and the proposed amended complaint, these statements would have been

made prior to her acquittal on October 4, 2011. She therefore failed to file a timely notice of tort claim, and amendment of the complaint would be futile.

The intentional breach and tortious interference of contractual agreement occurred, according to paragraph 125 of the proposed amended complaint, on June 3, 2010. The notice of tort claim was therefore untimely, and amendment of the complaint would be futile.

The next state law cause of action for civil conspiracy arises out of the prosecution of Greenfield for malicious injury to property. It, too, would be subject to the 180 day time bar, and amendment of the complaint would be futile.

Finally, the claim for spoliation of evidence is time barred. According to the proposed amended complaint, paragraph 131, the evidence that was destroyed consists of the survey commissioned by Defendants on December 10, 2010, and which related to the criminal prosecution resulting in Greenfield's acquittal on October 4, 2011. A claim for spoliation in the context of Greenfield's criminal prosecution would be barred by operation of Idaho Code § 6-906, and amendment of the complaint would be futile.

Greenfield's state law claims will be dismissed with prejudice, and her motion to amend will be denied.

**B.**     ***Fifth Amendment Claim (Thirteenth Claim)***

The Court previously addressed the futility of Greenfield's proposed amendments to her federal and state constitutional claims, and will not repeat its reasons here.

Greenfield proposes to add, however, a claim under the Fifth Amendment.[5] Greenfield alleges that Defendants deprived her generally of her due process rights, and she adds that she was not read her Miranda Rights during two instances of "custodial interrogation." She identifies the two occasions as "when Defendant Gunderson interrogated Greenfield on her property, even though at the time Greenfield was not under arrest," and again when she was "subjected to a restrained lack of freedom of movement" after she was arrested and processed for the crime related to cutting her neighbor's hedge.

Plaintiff has not stated a cause of action against Defendants for violation of due process under the Fifth Amendment. While it is true the Fifth Amendment is applicable to the States through the Fourteenth Amendment, *Malloy v. Hogan*, 378 U.S. 1 (1964), the Ninth Circuit Court of Appeals has clarified that the "Fifth Amendment prohibits the <u>federal</u> government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several <u>States</u>." *Castillo v. McFadden*, 399 F.3d 993, 1002 n. 5 (9th Cir.2005) (emphasis added). In other words, Greenfield may not bring a claim for violation of her due process rights under the Fifth Amendment against the Defendants, all of whom are <u>state</u> actors.

---

[5] The Fifth Amendment of the United States Constitution states:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

Other provisions of the Fifth Amendment, such as the prohibitions against self-incrimination and double jeopardy, are applicable to the States through the Fourteenth Amendment. *See Duncan v. State of La.*, 391 U.S. 145, 148 (1968) (self-incrimination); *Benton v. Maryland*, 395 U.S. 784, 794 (1969) (double jeopardy). But Greenfield's claims are subject to the two year statute of limitations. The incident with Defendant Gunderson is described in paragraph 57 of the proposed amended complaint. Greenfield alleges the event occurred on April 6, 2010, which is beyond the two-year statute of limitations. The second event occurred beyond the two-year statute of limitations as well. It is described in paragraph 60 of the proposed amended complaint as having occurred on June 14, 2010.

Further, based upon the facts as alleged, Greenfield cannot establish a Fifth Amendment violation. Even assuming Greenfield was subject to coercive police questioning,[6] coercive police questioning, in and of itself, does not violate the Fifth Amendment unless the statements obtained through that questioning are later "used" in a "criminal case." *Chavez v. Martinez*, 538 U.S. 760, 766–67 (2003) (Thomas, J., joined by Rhenquist, C.J., O'Connor, J., and Scalia, J.) Absent use of the statements against the defendant at trial or during pre-trial proceedings, the Fifth Amendment is not violated. *Crowe v. County of San Diego*, 608 F.3d 406, 429 (9th Cir. 2010) *See also Foti v. County of Marin*, No. C09-4167-CRB, 2010 WL 957645 *6 (N.D. Cal. March 12, 2010) (the

---

[6] In both instances, Greenfield does not describe situations involving coercive police questioning. On April 6, 2010, Greenfield alleges Defendant Gunderson approached her to ask about Mr. Wurmlinger's cut trees, Greenfield answered his questions, and thereafter drove to work. On June 14, 2010, Greenfield does not describe any conversation or interrogation other than the conversation she had with the female guard about her surgical incision causing her pain.

court found no Fifth Amendment violation when the statements were not used "to initiate or prove a criminal charge"). Greenfield has not alleged that any statements made by her were used against her in violation of the Fifth Amendment.

Any proposed amendment of the Complaint to assert Fifth Amendment violations based upon the facts alleged would be futile.

## CONCLUSION

Dismissal without leave to amend is generally improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009). The issue is not whether the plaintiff will prevail but whether she "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local* 13, 474 F.3d 1202, 1205 (9th Cir.2007) (citations omitted).

The Court will grant Defendants' motion for judgment on the pleadings without leave to amend for the reasons explained above. Greenfield has had an opportunity to submit her proposed amended complaint, and the Court reviewed and considered it. The scenario giving rise to Greenfield's complaint has been extensively pled, and there is simply no basis to conclude a further amended pleading would save this action from dismissal. There appears to be no legal basis for relief from this Court.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendants' Motion for Judgment on the Pleadings (Dkt. 35) is

   **GRANTED**;

2) Plaintiff's Motion to Amend Complaint (Dkt. 37) is **DENIED as MOOT**;

   and

3) Plaintiff's Complaint (Dkt. 1) is **DISMISSED** with prejudice.

Dated: April 03, 2014

Honorable Candy W. Dale
United States Magistrate Judge